**IN THE COURT OF APPEALS OF IOWA**

No. 24-1555
Filed March 19, 2025

**IN THE INTEREST OF L.G., K.G., and N.G.,**
**Minor Children,**

**D.G., Father,**
     Appellant.
_____

Appeal from the Iowa District Court for Scott County, Michael Motto, Judge.


A father appeals the adjudication of his three daughters as children in need of assistance. **AFFIRMED.**


Steven W. Stickle of Stickle Law Firm, P.L.C., Davenport, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee.

G. Brian Weiler, Davenport, guardian ad litem for minor children.

Jean Capdevila, Davenport, attorney for minor children.


Considered by Schumacher, P.J., and Badding and Chicchelly, JJ.

**SCHUMACHER, Presiding Judge.**

This appeal concerns three female children, L.G., born in 2008, and twins N.G. and K.G., born in 2010.  The father appeals their adjudication as children in need of assistance (CINA) and claims the district court "improperly admitted both documentary and testimonial evidence in contravention of the applicable rules of evidence regarding admissibility."  We affirm.

## I.      Background Facts and Proceedings

This family first came to the attention of the Iowa Department of Health and Human Services (HHS) in November 2021 upon reports that the father was sexually abusing the children.  HHS issued founded reports naming the father as the perpetrator of second-degree sexual abuse against the children, and a police report was filed.[1]  The father agreed to stay elsewhere during the investigation, and a safety plan was created in June 2022 that formally separated the children from the father.  In July, "because the parents were not following the safety plan," the HHS caseworker discussed a guardianship with Misty, who was related to the mother "through marriage" and had historically "been a good support for the girls, as well as for [the mother]."  The children moved in full-time with Misty.  In August, the parents agreed to temporary guardianship with Misty, effective until August 2023.  HHS closed its case in September 2022.

One year later, in September 2023, the family again came to the attention of HHS when HHS received reports that Misty was no longer able to take the children to medical appointments because the guardianship had lapsed and the

---

[1] It does not appear that criminal charges were filed against the father.

parents refused to authorize her to allow the children to get medical care.[2]  The mother expressed she wanted the children returned to her custody and that Misty refused to "give her kids back."  The mother refused to enter a safety plan for the children's return to her custody.  The father was still in the family home.  In November 2023, the State petitioned the court to adjudicate L.G., K.G., and N.G. as CINA.

After several continuances, an adjudication hearing took place in July 2024. The HHS case manager testified about the circumstances of the family's prior involvement with HHS in 2021 and 2022.  A second HHS caseworker testified about his involvement with the family.  That caseworker discussed the CINA assessment he submitted to the court, raising two issues: medical care for the children and the safety of the children if returned to the parents' home in light of the "prior founded assessment for sexual abuse."  The caseworker acknowledged the mother had agreed to "take the necessary steps to allow Misty to get the children to medical appointments" and, to his knowledge, "the medical concern has been alleviated."  Yet the second issue remained because of the fact the mother "wants the children returned to her care" despite the father still residing in the home.

The caseworker acknowledged the initial safety plan and the guardianship had expired and the father "has been trying to honor [HHS]'s concerns regarding private contact with any of the three children."  When asked why reunification could not take place immediately, the caseworker responded, "I would like to see the

---

[2] K.G. and N.G. both require specialized medical care (K.G. from a pediatric pulmonologist and N.G. from a leg specialist).

girls' needs put first, the safety of the girls put first, and they are experiencing concern about loving their mother, being with their mother, but their father being in the home, given what they went through in the past, as reported by them." The caseworker opined the children were at risk of adjudicatory harm "[b]ecause of a founded report that we have, and that those concerns, in my opinion, have not been addressed from that founded report." He also stated, "They have told me directly that they love their parents, but because of what happened in the past, they would struggle with being in the home with their father." The mother did not resist adjudication under Iowa Code section 232.96A(2), (3)(a), and 3(b) (2024). The father resisted adjudication.

The court granted the State's request to adjudicate the children as CINA under section 232.96A(3)(a) and (4). The court further found "[r]eturning the children to the home of [the parents] is not in their best interests" and "[k]eeping the children in the home of Misty . . . , the Suitable Other the kids know well, is the least restrictive placement for the children at this time."

At the dispositional hearing, the case manager testified the children were having regular visits with the mother. The girls were not having visits with the father because "[f]or one, the girls have stated that they do not want to see him right now, and, then, secondly, because he is—he's reportedly [the] perpetrator for the sexual abuse." Both parents continued to deny that sexual abuse occurred. The case plan required the father to complete a psychosexual assessment and follow through with recommended services. The mother was required to "seek counseling services with the children to better understand their victimization, in order to improve caretaker supervision needs for the children." The caseworker

also stated the mother must "acknowledge [the abuse] happened, to be there for support for the children, to provide them with an environment that is free from that." The case manager stated that "we need to ensure that there is a safe home environment without fear for the children, which would then include [the father] not being in the home at this time." When asked, "Is it possible to progress in the CINA case when neither parent will even acknowledge that sexual abuse is an issue[,]" the case manager responded, "I don't see how it can. That is a major barrier, and we can't start to make progress in the case until that first step is taken and it's acknowledged that this happened."

The court continued the CINA status and found "[r]emaining with Misty is the least restrictive disposition available." The father appeals.

## II.      Scope and Standard of Review

The State must prove its CINA allegations by clear and convincing evidence. Iowa Code § 232.96(2). We review the CINA proceedings de novo. *In re J.S.,* 846 N.W.2d 36, 40 (Iowa 2014). That review allows us to assess the facts and the law and "adjudicate rights anew." *In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021) (citation omitted). We are not bound by the district court's fact findings, but we give them weight. *Id.* "Our primary concern is the children's best interests." *J.S.*, 846 N.W.2d at 40.

We review evidentiary rulings for abuse of discretion. *In re N.N.E.*, 752 N.W.2d 1, 6 (Iowa 2008).

## III.     Analysis

The father claims the court "improperly admitted both documentary and testimonial evidence in contravention of the applicable rules of evidence regarding

admissibility" and "[o]nce the inadmissible evidence is properly stricken from the record, the State failed to meet its evidentiary burden of clear and convincing evidence" to adjudicate the children as CINA. We address each of the father's claims in turn.

## A.     Challenged Evidence

Iowa Code section 232.96 governs the admissibility of evidence in child-welfare cases. As a baseline, "[o]nly evidence which is admissible under the rules of evidence applicable to the trial of civil cases shall be admitted" in a child-welfare proceeding, except as otherwise provided in this section. Iowa Code § 232.96(3).

An exception appears in section 232.96(6):

> A report, study, record, or other writing or an audiotape or videotape recording made by the department of human services, a juvenile court officer, a peace officer or a hospital relating to a child in a proceeding under this division is admissible notwithstanding any objection to hearsay statements contained in it provided it is relevant and material and provided its probative value substantially outweighs the danger of unfair prejudice to the child's parent, guardian, or custodian. The circumstances of the making of the report, study, record or other writing or an audiotape or videotape recording, including the maker's lack of personal knowledge, may be proved to affect its weight.

Under this section, "certain hearsay evidence that would be otherwise prohibited by the Iowa Rules of Evidence is expressly admissible in such proceedings." 7 Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5.1101:3 (Nov. 2019 update).

At the adjudication hearing, the father challenged the admission of State's exhibits "PET 001," "PET 002," and "PET 003," as well as the GAL's exhibit "GAL 001," on hearsay grounds.[3]  The court ruled as follows:

> PET 001 is a letter to the County Attorney from the children's therapist giving a "brief update" on their therapy.  It notes some disclosures relating to the reason for therapy, as well as the diagnoses of each child.  PET 002 is a letter from the Child Protection Response Center regarding the children, acknowledging the girls' attendance and a brief note of why each girl is attending.  PET 003 is a detailed report from Dr. Richard Blunk of the Child Protection Response Center regarding his evaluation of [L.G].
>
> Although hearsay, the Court finds that all three documents are covered by one of the exceptions delineated in Iowa Code 232.96, specifically subsection (6) . . . .
>
> PET 002 and PET 003 are specifically on point as being directly from a child protection center, while PET 001 is from the children's primary caregiver in relation to treatment they received after the disclosures that form the basis for this child in need of assistance case.  The Court notes that admissibility under this section is initially based on the source of the document.  The Court finds PET 001, the writing derived from therapeutic sessions initiated after the disclosure of the alleged trauma that forms the basis of this case, to be indistinguishable from the type of source that is specifically articulated as admissible: a child protection response unit or hospital.

---

[3] The State contends that the father failed to preserve error on admissibility of the challenged exhibits.  We disagree.  The father objected, arguing "[t]here's no foundation" for the exhibits and "there's also statements in there which are clearly hearsay in nature."  And the court ruled on his objections.  Error was preserved.  As an aside, the exhibits in this appellate record do not contain a physical exhibit sticker or an electronic exhibit stamp.  "The clarity of the appellate record benefits by having exhibit stickers on the electronically submitted exhibits.  The exhibits contained in this record do not have exhibit stickers or other markings indicating the number of the individual exhibits."  *In re N.G.*, No. 19-1732, 2020 WL 825965, at *1 n.3 (Iowa Ct. App. Feb. 19, 2020).  "Our independent review of the record is decidedly more difficult due to the absence of exhibit stickers or other identifying markers on the bulk of the exhibits.  It is critical for review of the trial court record that the exhibits contain an identifier on the exhibit."  *In re A.D.*, No. 19-1459, 2020 WL 105093, at *4 n.7 (Iowa Ct. App. Jan. 9, 2020).  Also, "[i]t is essential for our review that exhibits have some identifying information."  *In re J.W.*, No. 14-0515, 2014 WL 3749419, at *2 n.1 (Iowa Ct. App. July 30, 2014).

The Court further finds the statements contained in PET 001, 002 and 003 are "relevant" and "material" and the probative value substantially outweighs any danger of unfair prejudice to [the father].

Further, any statements beyond how the children are doing in therapy that would be directly prejudicial to [the father]—"[L.G.] began therapy on 4/21/22 after disclosing that she had been sexually abused by her father . . . "—would be subject to an exception to the hearsay rule notwithstanding the specific carveouts in Iowa Code [section] 232.96. Statements made for medical diagnosis or treatment are generally exceptions to the hearsay rule. *See* Iowa R. [Evid.] 5.803(4).

With respect to GAL 001, however, the Court comes to a different conclusion. GAL 001 is a single document containing letters to the Court from each child, discussing what they want and, in some cases, discussing the allegations. The Court does not find that letters from the children, which are hearsay, are covered by any exception. They are not admissible at Adjudication.[4]

In our review of the challenged exhibits, we conclude that exhibits PET 002 and PET 003 were subject to the exceptions contained in section 232.96(6). Both exhibits are writings from a hospital relating to a child subject to this proceeding. We therefore reject the father's argument as to these two exhibits.

As noted above, exhibit PET 001 is a letter from the children's therapist. The district court admitted it under Iowa Rule of Evidence 5.803(4), determining that it fit under the exception for statements made for medical diagnosis and treatment. We are not convinced that a letter providing an update from a therapist fits under this exception. Based on the record before us, we assume without deciding this letter was admitted in error. But the evidence contained in exhibit PET 001 is cumulative of information contained in exhibits PET 002 and 003, which we have determined were properly admitted. Evidence that is merely cumulative is not prejudicial. *In re A.S.*, 743 N.W.2d 865, 869 (Iowa Ct. App. 2007).

---

[4] The exclusion of exhibit GAL 001 is not an issue on appeal.

Additionally, two child abuse assessments (prepared in November 2021 and September 2023) were judicially noticed by the district court, and the court noted "[s]ex abuse second degree was founded on [L.G.], age 12 at that point, [K.G.], age 11, and [N.G.], age 11 at that point." The assessments set forth the children's descriptions of the abuse and their reactions to the abuse, including being "upset"; "worried [the other] sisters are starting to get touched by [the father]"; not "want[ing] to be the person to break up the family" by telling what happened; and not telling about the abuse because no one would believe them.[5] While the request for judicial notice was objected to at the hearing, such is not challenged on appeal.

We agree with the father that a child protective assessment cannot be the sole basis for adjudication. *See* Iowa Code § 232.96(4); *In re D.S.*, No. 14-2021, 2015 WL 800084, at *1 (Iowa Ct. App. Feb. 25, 2015). But here it was not the sole basis. Aside from documentary evidence separate from the child protective assessments, the State called five witnesses.

As to those witnesses, the father's brief also alleges "the court improperly admitted testimonial evidence in contravention of the applicable rules of evidence regarding admissibility." But his argument on appeal is limited to the following:

> Counsel for the father raised multiple and repeated objections to portions of the testimonial evidence. For example, father's counsel objected to testimony from Joelle England and Rodney Blue, who both provided hearsay testimony regarding what they each read in Mr. Schmitz's Child Abuse Assessment Summary. The Court repeatedly overruled father's counsel's objections to the hearsay in error and contrary to the rules of evidence even as the Court acknowledged the testimony's status as hearsay without an

---

[5] The record also includes a court-appointed special advocate report to the court, generally discussing the children's participation in therapy following the abuse.

exception (e.g., "recognizing he's just repeating from the assessment."). Adjudicatory Transcript, p. 47, lines 24-25. The Court improperly considered multiple items of testimony from the record, overruling counsel's objections improperly at multiple junctures in the hearing. Father's counsel's objections to testimony should have been upheld for the reasons proffered at the time of the objection and for the reason(s) stated on the record. The Court erred in failing to sustain father's counsel's multiple objections to hearsay and other inadmissible evidence.

The father's brief fails to cite to the record on all but one of his challenges to testimony. The father's statement, "The Court erred in failing to sustain father's counsel's multiple objections to hearsay and other inadmissible evidence" is not sufficient to enable us to review any other challenged testimony and does not comply with the rules of appellate procedure. *See* Iowa Rs. App. P. 6.201(1)(d), .1401–Form 5; *In re K.D.*, No. 21-0581, 2021 WL 3897419, at *2 (Iowa Ct. App. Sept. 1, 2021) (discussing these rules). Therefore, we consider only the objection that contains a cite to the record on the testimony of Rodney Blue, a child protective worker for HHS:

> Q: In this case, all three girls were interviewed, correct?
> A: Correct.
> Q: And had knowledge of the events, correct?  A: Correct.
> FATHER'S COUNSEL: Objection; continues to bolster the document that was admitted.
> COURT: Understood.  I'll give it the weight I think it deserves, recognizing he's just repeating from the assessment.

We find no abuse of discretion in this preserved challenged evidentiary ruling.

**B.     Grounds for Adjudication**

We turn to the grounds for adjudication challenged by the father on appeal, as the father claims the adjudication is not supported by the evidence.  He maintains "not a single witness testified of direct knowledge of the veracity of the

[sexual abuse] allegations." According to the father, "[o]nce the record is stripped of inadmissible evidence, the State's case hangs by the thread of the allegations contained in the Child Abuse Assessment Summary," but "[t]he State did not offer Mr. Schmitz, author of that critical report, for testimony to support his findings, nor to be subject to cross examination."[6] In short, the father denies he sexually abused the children.

A court may enter a CINA adjudication if the court "concludes that facts sufficient to sustain the petition have been established by clear and convincing evidence and that its aid is required." Iowa Code § 232.96(9). "Clear and convincing evidence exists when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence." *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (cleaned up).

The court adjudicated the children under section 232.96A(3)(a) and (4). We discuss each ground in turn. *See J.S.*, 846 N.W.2d at 41 (addressing each ground found by the court because "[t]he grounds for a CINA adjudication do matter"); *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995) ("The underlying grounds of adjudication in [CINA] cases have important legal implications beyond the adjudication.").

Section 232.96A(3)(a) applies when a "child has suffered or is imminently likely to suffer harmful effects as a result of" "[m]ental injury caused by the acts of the child's parent." "'Mental injury' means a nonorganic injury to a child's

---

[6] As noted above, the father was offered the opportunity to examine caseworker Schmitz on another day, but he rejected the court's offer. In any event, the father was able to cross-examine two other caseworkers who worked on this case and were privy to the contents of the assessment.

intellectual or psychological capacity as evidenced by an observable and substantial impairment in the child's ability to function within the child's normal range of performance and behavior, considering the child's cultural origin." Iowa Code § 232.2(39).

Here, the children suffered from trauma associated with the sexual abuse in their home perpetrated by the father. They suffered further trauma because the mother maintains they are lying about the sexual abuse, and the mother voluntarily placed them with Misty because she was not willing to make the father leave the family home. This ground for adjudication is supported by the witness testimony, properly admitted exhibits PET 002 and 003, and the judicially noticed child abuse assessments not challenged on appeal. Specifically, PET 003 noted L.G.'s panic attacks, anxiety, depression, being angry, and "sometimes wanting to hurt herself or others." L.G. also related episodes of cutting. PET 002 noted all three children were being seen for behavioral health intervention. We conclude there is clear and convincing evidence to support the CINA adjudication under section 232.96A(3)(a).

The court also relied on section 232.96A(4), which applies when "[t]he child has been, or is imminently likely to be, sexually abused by the child's parent." The court relied on the founded report of sexual abuse against the father and the testimony of HHS caseworkers, who described their interactions with the children and the children's behaviors since the abuse was exposed. The father's attorney moved to dismiss the State's petition, arguing "there's not a basis for [the court] to find there's adjudication" because the parents were cooperating with facilitating the

children's medical care and there was no evidence the father had been criminally charged with inappropriate contact with the children in the past.

On appeal, we give weight to the district court's factual findings, especially when considering the credibility of witnesses. *In re B.B.*, 598 N.W.2d 312, 315 (Iowa 1999). We find there is clear and convincing evidence in the record to support the CINA adjudication under section 232.96A(4), including the founded child abuse assessment against the father for sexual abuse and the additional evidence presented at the adjudication hearing. And we are not persuaded by the father's argument that because criminal charges were not filed against the father the district court lacked sufficient evidence to adjudicate the children. *See D.D.*, 955 N.W.2d at 196 (Christensen, C.J., concurring specially) ("Regardless of why the criminal charges were dropped, the sexual abuse report against Stepdad remains founded and the juvenile court made similar findings that the sexual abuse occurred.").

To the extent that the father makes an argument that the State failed to meet its burden of proof because the author of the child abuse assessment did not testify, as previously noted, this argument goes to the weight to be given to the report, not the admissibility. As to the author's unavailability, the court ruled:

> If we get done today and we're not finished, and a party needs to call another witness that's not here, I'm not going to prevent them from doing so. Again, we'll proceed today, and if we have to set a day two because we need another witness, we can do that or cross that bridge if there's an objection to it, but I'll note that for the record.

No additional witnesses were called by any party. But as noted above, the father does not challenge the district court taking judicial notice of the child abuse

assessments. So any testimony from the author of the founded assessment concerning sexual abuse would be cumulative to that already in the record.

**AFFIRMED.**